

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable Alwin E. Pape
County Attorney
Guadalupe County
Seguin, Texas

Modified by U-32

Dear Sir:                    Opinion No. O-7246

Re: Effect of tax reduction by
school district concerning
equalization aid under S.B.
167, Acts 1945, 49th Leg.

We acknowledge receipt of your letter of recent date,
together with Statement and Argument, in which you propound the
following questions (which we take the liberty to paraphrase)
as follows:

1. The Elm Creek CSD No. 18 of Guadalupe County has
heretofore received State aid under the above-cited Act, assess-
ing and collecting the minimum 50¢ maintenance tax rate re-
quired by such Act. In May, 1945, an additional 25¢ tax was
levied for the year 1945, "to take care of extra transportation
cost." This additional 25¢ tax was not levied for the year
1946, and accordingly the State Department of Education has ad-
vised that the District cannot qualify for State aid. The
particular question, under the above facts, is whether the Leg-
islature intended to deny to a school district the right to
increase its tax rate for one year and then to return to its
original and usual rate, and still receive State aid.

2. The question also arises as to whether a school
district can fluctuate its tax rate to meet the expense neces-
sary from year to year, without jeopardizing its qualification
for State aid. "In other words, it seems to us that a correct
interpretation of the intent of (this Act) is that within the
two year period covered by (the Act) there must be no lowering
of the rate for that District that was being assessed at the
beginning of that period."

Sec. 2, Article I, Ch. 361, Acts 1945 (S. B. 167,
49th Leg.), the pertinent portion of the Act in question, reads
as follows:

"No school district shall be eligible to receive
any type of aid authorized under the provisions of this
Act unless it shall be providing for the annual support

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

of its schools by voting, levying and collecting for the current school year a local maintenance school tax of not less than Fifty Cents (50¢) on the One Hundred Dollars ($100.00) of property valuation in the entire district. The property valuations shall not be less than said property is valued for state and county purposes. The income from such a maintenance tax in excess of the required Fifty Cents (50¢) maintenance tax must first be used to retire indebtedness, if any, in the local and Equalization (Rural Aid) school funds. After the indebtedness in these funds, if any, has been retired, the income from this maintenance tax in excess of the required Fifty Cents (50¢) maintenance tax may be used at the discretion of the local school authorities of the district for any lawful school purpose except increasing or supplementing any teacher's or administrative salaries. Any or all maintenance tax above Fifty Cents (50¢) may not be included in the calculation of need for aid, but shall be reported in the budget with an itemized statement of its expenditures. If the income from the maintenance tax above Fifty Cents (50¢) is not spent as prescribed herein, it shall be included as receipts in the budget. In order to comply with the terms of this section, it shall be necessary for such school districts applying for any type of aid authorized under the terms of this Act, to report all valuations within such districts, including all consolidated districts and annexed districts, and failure to report all such valuations shall prevent such district from receiving any type of aid authorized under this act.

"No school district will be eligible for aid under the provisions of this Act which has reduced its tax rate within the two years immediately preceding the year for which aid is applied for hereunder or which has reduced its tax valuation in order to show budgetary need.

"* * * * * *."         (Underscoring ours)

The underscored provision of the above-quoted Act has been discussed in several previous opinions of this Department in connection with fact situations similar to the one presented in your letter.

In previous Opinion No. O-7260, we held that such above-quoted provision was constitutional. In previous Opinion No. O-7017, addressed to the First Assistant State Superintendent of Public Instruction, we held that school districts which had reduced their tax rate during the school year, 1943-44, were

not eligible to receive aid under the said provision, even though such school districts had no way of knowing that an action which their boards took nearly two years ago would affect them adversely in securing aid under the current Equalization Act. We quote from such opinion as follows:

"The foregoing provisions of Sec. 2 (underscored portion quoted above) are plain and unambiguous. They must be complied with in order for any school district to be eligible for any type of aid . . . .

"Whether such provision is wise or unwise, is not for this Department to determine. The Legislature is the public policy forming body of this State. Its Acts, when not in conflict with our State Constitution, or our Federal Constitution and the laws of Congress passed thereunder, are not for us to question, but must be upheld and enforced. 'When the intent is plainly expressed in the language of a statute, it must be given effect without attempting to construe or interpret the law.' 39 Tex. Jur. p. 168." (Parenthetical insertion added).

Our previous Opinion, No. O-6768, held to the same effect as the above quoted opinion, with the added holding that the above underscored portion of Sec. 2 of the Act would apply to prevent a reduction in the tax rate of a district which has contracted to send all of its scholastics to another district.

Subsequent to the above cited opinions, this Department ruled in two recent Opinions, No. O-7217 and O-7403, as follows:

(a) That where, for administrative reasons, a school district reduced its valuations and, at the same time, increased its over-all tax rate, thereby retaining the same net total tax revenue as before, or slightly increasing the same, its eligibility for equalization aid was not affected, since the valuations were held not to have been reduced in order to show budgetary need.

(b) That where a school district reduced its maintenance tax rate from $1.00 to 50¢, and then levied a 50¢ bond tax, the district did not disqualify itself for aid because neither the over-all tax rate nor the valuations had been reduced, and therefore, the statutory prohibition was not applicable. It will be observed that such

Hon. Alwin E. Pape, Page 4


       prohibitory portion contained in the second paragraph
of Sec. 2 of the Act relates to the over-all tax rate
and is not confined to the maintenance tax, as is the
wording in the first paragraph of such section.

       We attach copies of all the above cited previous opin-
ions of this Department for your convenience.

       Turning now to the questions you have propounded, we
answer your <u>first question</u> to the effect that the second para-
graph of Sec. 2 of the current Equalization Aid Act (cited
supra) does deny to a school district the right to increase
its tax rate for one year and then to <u>decrease</u> its tax rate
so as to return to the original tax rate, and still qualify
for State aid, if such decrease occurred within the two year
period immediately preceding the year for which aid is applied
for under the current Act.

       Your <u>second question</u> is answered to the same effect,
<u>viz.</u>, a school district may not, under the terms of the cur-
rent Act, fluctuate its tax rate from year to year to meet
changing expense requirements without jeopardizing its qualifi-
cation for State aid, if by such fluctuations its over-all tax
rate is thereby decreased to any extent within the above-men-
tioned two year period, even though such decrease does not
lower the tax rate which was being assessed at the beginning
of such two year period.

       In our answer to your questions it is to be noted that we
refer to decreases in the <u>over-all tax rate</u> as heretofore stated,
either the maintenance or <u>the bond tax rate</u> may be changed with-
out jeopardy provided the over-all tax rate is not thereby de-
creased, and provided, further, that the maintenance tax is not
decreased below 50¢.

       We have carefully considered your arguments against
the ruling of the State Department of Education relative to the
restrictions of the current Equalization Act and our previous
opinions, attached hereto, discuss in some detail the points
raised in your brief. We repeat, therefore, that whether the
provisions of the current Equalization Act are wise, or unwise, it
is not for this department to judge. The provision in question
is plain and unambiguous and must be complied with in order for

Hon. Alwin E. Pape, Page 5

any school district to be eligible for any type of aid under such Act.

Trusting that we have fully answered your questions, we remain,

Very truly yours

ATTORNEY GENERAL OF TEXAS

APPROVED OCT 4, 1946

ATTORNEY GENERAL OF TEXAS

By

W. N. Blanton, Jr
Assistant.

WNB/JMo

Encls



APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN